STOULIG, Judge.
This is an appeal by plaintiff, Robert G. Haik, from an adverse judgment dismissing his suit against the defendant Stephen J. Rowley as an accommodation endorser on several promissory notes executed by his father, Harold L. Rowley. The trial court rendered judgment against the maker of the notes but dismissed the suit against the endorser, apparently predicated upon the finding that presentment for payment and notice of dishonor were not made timely. We affirm.
Appellant and the defendant Harold Rowley were both directors of Petrocomp, an oil exploration company. Haik transferred his stock to Harold Rowley in exchange for a series of five promissory notes each dated September 20, 1972 and each in the sum of $10,000. The first note matured on September 20, 1973, and the others had successive annual maturity dates of September 20, 1974 through 1977. The notes were executed by Harold Rowley and endorsed by his son Stephen Rowley.
All of the notes contained the following acceleration clause:
“This obligation is one of a series of 5 notes and failure to pay any one of the notes of this series at its maturity, shall ipso facto and at once mature all of the said notes of said series.”
The notes did not provide for waiver of presentment for payment or notice of dishonor.
Harold Rowley failed to pay the note maturing on September 20, 1973 and on September 20, 1974. On March 18, 1975, plaintiff wrote to the maker directing his attention to the fact that the $50,000 represented by the five notes became due and payable in September, 1973 and that some arrangement should be made for their payment. Obviously plaintiff’s demand was based on the acceleration provision in the notes. No payments forthcoming, plaintiff filed suit on April 23, 1975 against Harold and Stephen Rowley in their respective capacities of maker and endorser.
The rights and obligations of the parties came into existence prior to January 1, 1975 (effective date of R.S. Title 10 entitled “Commercial Laws”) and are therefore governed by the provisions of the Negotiable Instruments Law, R.S. Title 7.
Plaintiff’s appeal is limited to that part of the judgment dismissing his suit against the endorser and involves the issue of the date on which the acceleration clause became executory. Or stated another way, did the suit filed on April 23, 1975 constitute timely presentment for payment or notice of dishonor so as to render the endorser liable if not on all the notes at least on those whose stated maturity dates were subsequent to the filing?
A reading of the acceleration clause clearly establishes that its provisions are self-operative and become executory in the event of default in the payment of any of the notes at maturity. While it is within the province of the holder as to when he will assert the benefit of the accelerated maturity date, this right is purely an option as to enforcement and not to its creation. The verbiage “ * * * shall ipso facto and at once mature * * * ” leaves no doubt that the acceleration clause is self-operative and nonpayment renders it executo-ry.
In 10 C.J.S. Bills and Notes § 251 c appears the following:
“An acceleration clause may be absolute or optional in form. If absolute, maturity occurs on the happening of the *CDLXXIII specified default; if optional, maturity does not occur until the exercise of the option.
“A provision in notes accelerating maturity on nonpayment of interest, installments, or other default may be absolute in form and leave no option to either party * *
In the instant case the acceleration provision is absolute and not optional.
Plaintiff testified during the trial that as of September 1973 he considered all notes in the series due when the defendant defaulted in the payment of the first note. His letter of March 18, 1975 to the defendant-maker corroborates that all notes were due and owing in September 1973. Predicated upon the provision contained in the instruments and plaintiff’s own written and oral statements, it must be concluded that the acceleration clause became operative and all five notes due and payable in September 1973.
The next issue presented is whether the endorser is entitled to receive presentment for payment and notice of dishonor and if he is whether these prerequisites were fulfilled.
At the outset it must be noted that the instruments themselves did not contain a waiver of these requirements. The unrebutted testimony of Stephen Row-ley establishes that he received no value, remuneration, or benefit in consideration for his endorsing the notes of his father. Under R.S. 7:29 he is an accommodation endorser. As such, he is entitled to timely notice of presentment for payment and of dishonor (R.S. 7:70) and failure to give such notice will result in his discharge from liability (R.S. 7:89). The timeliness of notice to a nonresident (Stephen Rowley is a resident of Ohio) is governed by R.S. 7:104 and required plaintiff to deposit the notice of dishonor in the mails in September 1973 when the notes were in default — which was not done.
Admittedly notice of dishonor of a negotiable instrument to persons secondarily liable may be given in any form, verbal' or written (R.S. 7:96), provided it sufficiently apprises the endorser that the instrument has been dishonored thereby rendering him liable thereon and simultaneously affording him the opportunity to satisfy his obligation without the attendant costs of litigation.
A review of the record clearly discloses that the plaintiff failed to timely present for payment or timely give notice of dishonor to the accommodation endorser. Plaintiff testified that as early as 1973 he often verbally reminded the Rowleys that the first note would be due in September 1973 and that his first formal action was his demand letter addressed to Harold Rowley on March 18, 1975.
According to the testimony of Harold Rowley the plaintiff first discussed payment of the notes with him at a meeting in Ohio in March 1974. He acknowledged receiving plaintiff’s demand letter of March 18, 1975.
Stephen Rowley (who has continuously resided in Ohio prior to the execution of the notes and through the present date) denied ever receiving, either verbally or written, a demand for payment but admitted he did see the March 19,1975 letter addressed only to his father.
Both Rowleys testified that plaintiff’s stock was transferred in Harold Rowley’s name in order that he could try and sell it for plaintiff’s account and that the notes were given as security because of Rowley’s advanced age. His son allegedly signed as an endorser so that he would be familiar with the transaction and he could effect the return of the stock in the event of his father’s death.
While the trial judge did not give reasons for judgment, we can assume that he rejected the Rowleys’ version of the transaction and treated it as a sale of the stock. In rendering judgment only against the maker but not against the endorser, it must be concluded that plaintiff had not timely given notice of presentment of payment and of dishonor to the endorser, which he was required to do. The record amply supports such a finding.
*CDLXXIV The institution of the suit by plaintiff almost two years after the accelerated maturity of the notes cannot serve as a notice for presentment of payment and of dishon- or to the endorser for two reasons: first it is not timely; and second, to accord such a result would defeat one of the purposes of timely notice to an endorser — the avoidance of the expense of litigation.
For these reasons the judgment of the trial court is affirmed at appellant’s cost.

AFFIRMED.

BEER, J., dissents in part.